**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN L. MCGILL,** | : | **CIVIL ACTION NO. 1:09-CV-1404** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **T.R. SNIEZEK**, | : | |
| | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Petitioner Kevin L. McGill ("McGill"), an inmate incarcerated at the Federal

Correctional Institution at Schuylkill ("FCI-Schuylkill"), Pennsylvania, filed the

instant petition for writ of habeas corpus on July 20, 2009, challenging a decision of

the United States Parole Commission ("USPC" or "parole commission") to revoke

his parole, not afford him credit for any time he spent on parole, and continue

imprisonment until the expiration of his District of Columbia ("D.C.") sentence.[1]

(Doc. 1, at 12.).  Specifically, he alleges that the USPC offended the Ex Post Facto

clause in determining his eligibility for reparole when they applied USPC

guidelines rather than the District of Columbia Board of Parole ("D.C. Board") 1987

guidelines applicable to reparole.  For the reasons set forth below, the petition will

be granted to the extent that the USPC will be directed to hold a new hearing

---

[1] McGill filed this petition pursuant to 28 U.S.C. § 2241.  For purposes of
federal habeas relief, because McGill is in custody pursuant to a District of
Columbia court judgment, he is a state prisoner and the petition is therefore
properly considered one filed under 28 U.S.C. § 2254.  <u>See Madley v. U.S. Parole
Comm'n</u>, 278 F.3d 1306, 1309 (D.C.Cir. 2002).

utilizing the 1987 District of Columbia Municipal Regulations ("D.C. Regulations") applicable to reparole.

## I.    **Background**

Following a conviction of Murder II While Armed in violation of District of Columbia Code §§ 22-2403 and 22-3202, McGill was sentenced by the Superior Court for the District of Columbia on May 23, 1996, to a five to fifteen-year term of imprisonment. (Doc. 13-2, at 4.) McGill's initial parole consideration hearing took place on August 5, 1998. (Doc. 16-2, at 4.) Parole was denied at that time. (Id. at 6.)

Effective August 5, 1998, the District of Columbia Board of Parole was abolished and its jurisdiction over parole decisions for D.C. Code felons was transferred to the USPC. See National Capital Revitalization and Self-Government Improvement Act, Pub.L. No. 105-33, § 11231, 111 Stat. 712, 745-46 (codified at D.C. Code § 24-131). Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C. Code offenders' suitability for parole. See Sellmon v. Reilly, 551 F. Supp.2d 66 at 72-73 (D. D.C. 2008) (discussing revisions). The revisions were codified at 28 C.F.R. §§ 2.70-2.107 in 2000 (2000 Regulations). The 2000 Regulations specify that they are applicable to any D.C. Code offender, such as McGill, whose first parole hearing would occur after August 4, 1998. See 28 C.F.R. § 2.80(a)(5).

On December 6, 2002, McGill was mandatorily paroled and was to remain under the supervision of the USPC until July 20, 2008. (Doc. 13-2, at 5.) However, while on parole, he committed new criminal conduct which resulted in the issuance

of a parole violator warrant dated June 6, 2007, charging that he violated the terms

of his supervised release as follows: "Charge No. 1 - Failure to Report to

Supervising Officer as Directed; Charge No. 2 - Law Violation - Assault; Charge No.

3 - Law Violation - Violation of Civil Protection Order." (Id. at 6, 7.) On August 2,

2007, he pled guilty to one count of simple assault and two counts of violating a civil

protection order. (Doc. 1, at 11.) The warrant was supplemented on August 9, 2007,

to reflect that McGill was convicted of simple assault and violation of a civil

protection order and sentenced to serve three consecutive thirty-day Misdemeanor

sentences upon his release from USPC incarceration. (Id. at 8.)

His revocation hearing that was held on August 13, 2007, resulted in two

different recommendations. (Doc. 13-2, at 9.) The hearing examiner recommended

that parole be revoked, that none of the time spent on parole be credited, but that

he be paroled effective 11/30/2007, to the consecutive misdemeanor sentences,

which would require him to serve a total of eight months with drug and mental

health aftercare. (Id. at 12.) The Executive Reviewer recommended the following:

> Revoke parole. None of the Time Spent on Parole Shall be Credited.
> Continue to Expiration with the Special Drug Aftercare Condition.
> You are a more serious risk than indicated by your salient factor score
> and reparole guidelines in that you were originally convicted of a violent
> offense, Murder II while armed. While on supervision your were
> convicted of Simple Assault as it regarded an arrest on 6/4/07.
>
> Prior to this event, it has been alleged that you assaulted the same victim
> (police report dated 3/8/06) and a Civil Protection Order had been issued.
> You have also been convicted of violation of the Civil Protection Order (2
> Counts).

The Community Supervision Officer reported, and the Commission

concurs, that you are aware of your deeply entrenched and lifelong problem with abusive behavior but you fail to make a commitment to change your behavior while in the community on supervision. Thus, this failure and inability to change resulted in 3 domestic violence arrests, 6/2/06 Threats to Do Bodily Harm, 3/8/06 Simple Assault, and 6/4/07, Simple Assault, which resulted in a conviction.

You are considered a threat to the community and a more serious risk than indicated by your salient factor score and guidelines.

(Id. at 12-13.) A notice of action was issued on September 5, 2007, notifying McGill that as a result of the hearing, his parole was revoked, none of the time spent on parole would be credited, and he would continue to be imprisoned until the expiration of his sentence. (Doc. 13-2, at 14.) The rationale for this decision was as follows:

Your parole violation behavior has been rated as criminal conduct of Category Two severity because it involved Simple Assault. Your salient factor score is 6. [ ] As of 09-03-2007, you have been in confinement as a result of your violation behavior for a total of 3 month(s). Guidelines established by the Commission indicate a customary range of 0-10 months to be served before release. After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than indicated by your salient factor score and reparole guidelines in that you were originally convicted of Simple Assault as it regarded an arrest on 6/4/07.

Prior to this event, it had been alleged that you assaulted the same victim (police report dated 3/8/06) and a Civil Protection Order had been issued. You have also been convicted of violation of a Civil Protection Order (2 Counts).

The Community Supervision Officer reported, and the Commission concurs, that you are aware of your deeply entrenched and lifelong problem with abusive behavior but you fail to make a commitment to change your behavior while in the community and on supervision. Thus, this failure and inability to change resulted in 3 domestic violence arrests, 6/2/06 Threats to Do Bodily Harm, 3/8/06 Simple Assault, and 6/4/07, Simple Assault, which resulted in a conviction.

You are considered a threat to the community and a more serious risk than indicated by your salient factor score and guidelines.

(Doc. 13-2, at pp. 14-15.)  McGill appealed this decision and, on March 14, 2008, the

National Appeals Board affirmed.  (Id. at 17.)

A statutory interim hearing was held on July 2, 2009.  The following

evaluation was made:

Mr. Kevin McGill, currently age 36 appeared before this examiner for a Statutory Interim Hearing on a parole violator term of 2053 days.  Per a Notice of Action dated 9/5/2007, the Commission ordered that he be continued to expiration on the violator term.  The basis for the subject's revocation was for his domestic assault on his former wife.  Guidelines for this violation were 0-10 months based on his SFS of 6.  The Commission found him to be a more serious risk than the guidelines indicated because he has repetitive instances of domestic assault.

The purpose of today's hearing was to determine if there had been any significant changes in the case [and review] indicates there weren't any change in the Commission's previous determination.  The subject has maintained good work reports at FCI.  However, he completed very little programming.  This examiner does not believe a Superior Program Achievement Award would be appropriate at this time.  To his credit, the subject maintained clear conduct since his return to custody on the violator term.

The subject did want to focus on the fact that he believed that the DC Board of Parole guidelines should apply to his case.  He noted the date of his original offense for murder as a basis to apply guidelines other than the Commission's reparole guidelines.  The examiner explained to the subject as a parole violator, a recent litigation relative to Expo [sic] Facto would not apply to his case.

At this point the examiner finds no reason to order any change in the Commission's previous decision.  I would however, recommend that the Commission add Special Conditions that would require him to participate in Domestic Violence Counseling and also prohibit further contact with the victim of the parole violation behavior.  These were not added after the Revocation Hearing and it does appear the subject will have mandatory supervision after his release to the community.

(Doc. 13-2, at 20.) McGill was notified *via* an August 1, 2009 Notice of Action that there would be no change in the original notice of action requiring that he serve until his sentence expired for the following reasons: "Retroactivity does not apply. Neither your recalculated severity rating (old Category Two; new Category Two) nor your recalculated salient factor risk category (old Category Good, old score 6, new Category Good, new score 6) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring." (Id. at 20-23.)

II.   **Discussion**

McGill argues that the USPC's retroactive application of the federal guidelines during the reparole process violates the Ex Post Facto clause because, unlike the D.C. Regulations, the federal guidelines fail to consider post-incarceration factors, and, as a result, he has served a longer period of incarceration than under the D.C. Regulations. (Doc. 1, at 11, 12; Doc. 15, at 6.)

The Ex Post Facto Clause of the United States Constitution forbids Congress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." See U.S. Const. Art. I, § 9 ("No . . . ex post facto Law shall be passed."); Weaver v. Graham, 450 U.S. 24, 28 (1981). "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation, increase the

punishment for a crime after its commission." <u>Garner v. Jones</u>, 529 U.S. 244, 249

(2000) (citations omitted). "[P]arole guidelines [can] constitute laws within the

meaning of the ex post facto clause." <u>Crowell v. United States Parole Comm'n</u>, 724

F.2d 1406, 1408 (3d Cir. 1984). A retroactive application of a change in parole laws,

if applied rigidly or mechanically, can constitute an ex post facto violation. <u>See</u>

<u>Bonilla v. Vaughn</u>, 1998 WL 480833, at *7 (E.D.Pa. 1998). The relevant inquiry is

whether the new guideline presents a significant risk of increasing the prisoner's

amount of time actually served, *i.e.* the practical effect on the length of

incarceration. <u>Garner</u>, 529 U.S. at 255. A petitioner may not prevail simply by

showing facial differences between the old and new policies but, rather, must

demonstrate that the retroactive application of the Commission's guidelines will

result in a longer period of incarceration than under the D.C. Board's guidelines.

<u>Sellmon v. Reilly</u>, 551 F. Supp. 2d 66, 88-89 (D. D.C. 2008); <u>Fletcher v. Reilly</u>, 433

F.3d 867, 877 (D.C. Cir. 2006). A " 'speculative and attenuated possibility . . . of

increasing the measure of punishment' is not enough." <u>Richardson v. Pa. Bd. of</u>

<u>Prob. & Parole</u>, 423 F.3d 282, 288 (3d Cir. 2005) (quoting <u>Cal. Dep't of Corr. v.</u>

<u>Morales</u>, 514 U.S. 499, 509 (1995)).

　　　　After considering at length the issue of post-incarceration factors during the

reparole process in the context of the Ex Post Facto clause, the United States Court

of Appeals for the District of Columbia Circuit determined that the USPC's

regulations for reparole are "substantially different" on their face from the

regulations they replaced with respect to post-incarceration behavior. <u>Fletcher</u>, 433

F.3d at 878. The <u>Fletcher</u> Court set forth the following detailed comparison of the

1987 D.C. Board's guidelines and the USPC's new guidelines:

> At D.C. Board reparole hearings, release decisions were based on the same criteria used in connection with parole determinations. D.C. Mun. Regs. tit. 28, § 204.1. To "determin[e] whether an incarcerated individual [would] be paroled or reparoled," the D.C. Board employed an analytic framework that relied on both "pre and post-incarceration factors." <u>Id.</u> The Board would first consider the following pre-incarceration factors: prior convictions and adjudications, prior commitments of more than 30 days, age at commission of current offense, recent commitment-free period, status of prisoner at time of current offense, and history of heroin or opiate dependence. D.C. Mun. Regs. tit. 28, § 204.4-204.16. The pre-incarceration factors were then weighed by a formula to determine the candidate's risk category, called a "salient factor score." D.C. Mun. Regs. tit. 28, § 204.17 & Appendix 2-1. The Board would then consider pre- and post-incarceration factors to determine whether the candidate should be reparoled. D.C. Mun. Regs. tit. 28, § 204.18. Two post-incarceration factors in particular were important: institutional behavior and "sustained achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense." D.C. Mun. Regs. tit. 28, § 204.18(h)-(i). These factors, along with a second set of pre-incarceration factors, were then integrated into a calculus to produce a point score which constrained the Board's discretion in making final reparole determinations. <u>See</u> D.C. Mun. Regs. tit. 28, § 204.19 & Appendix 2-1. The regulations allowed for discretionary departures from the point score "in unusual circumstances." D.C. Mun. Regs. tit. 28, § 204.22. Finally, the regulations provided that, "[i]n general, the Board shall not grant parole unless the prisoner has substantially observed the rules of the institution in which he or she is confined." D.C. Mun. Regs. tit. 28, § 205.1. At rehearings, the Board would take the original "total point score from the initial hearing and adjust that score according to the institutional record of the candidate since the last hearing pursuant to Appendix 2-2." D.C. Mun. Regs. tit. 28, § 204.21.

> The D.C. Board's regulations plainly evidence a rehabilitative focus in making parole and reparole determinations. Post-incarceration factors were formally integrated into release determinations. This is different from the current federal regulations' singular focus on pre-incarceration factors. <u>See</u> <u>Cosgrove v. Thornburgh</u>, 703 F. Supp. 995, 1003-04 (D.D.C.1988) (finding that the Board utilized both pre-incarceration and post-incarceration factors in making parole suitability determinations,

whereas "[t]he Commission uses only two pre-incarceration factors, thus de-emphasizing any rehabilitative results from incarceration"). The U.S. Parole Commission recognized this difference when it undertook rulemaking in advance of taking over the D.C. Board's authority in 1998.

Acknowledging that "the parole function for D.C.Code offenders rests on a premise somewhat different from that of the federal parole guidelines," the Commission passed its interim parole regulations, choosing to incorporate the rehabilitative factors of the D.C. Board's regulations. See Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code ("Interim Parole Regulations"), 63 Fed.Reg. 39,172, 39,174 (proposed July 21, 1998) (codified at 28 C.F.R. §§ 2.70-2.90 (1999)) (citing Cosgrove, 703 F.Supp. at 1004 n. 6); see 28 C.F.R. §§ 2.73, 2.80 (1999). No such modifications were made in the regulations governing decisions to grant reparole when the new offense for which parole was revoked was not a D.C. Code offense. Interim Parole Regulations, 63 Fed.Reg. at 39,175; see 28 C.F.R. § 2.87 (1999). In other words, the federal regulations for reparole apply when a D.C.Code offender's parole is revoked based on an offense that was not a D.C. Code offense. Id. The federal reparole regulations only consider offense and offender characteristics. See 28 C.F.R. § 2.20 (1999) (federal parole framework incorporated into reparole analysis by 28 C.F.R. § 2.21). The interim regulations went into effect on August 5, 1998. See Interim Parole Regulations, 63 Fed.Reg. at 39,175.

In 2000, the Commission's interim rules were partially modified and then promulgated as final rules. The final rules took effect on August 5, 2000. See Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code ("Final Parole Regulations"), 65 Fed.Reg. 45,885 (proposed July 26, 2000) (codified at 28 C.F.R. §§ 2.70-2.107 (2001)). The final rules specified the Commission's special reparoling procedures for prisoners serving a new, parolable D.C. Code sentence, but otherwise made no changes to its general presumption that reparole determinations would be based on the federal reparole regulations. Id. at 45,894; see 28 C.F.R. § 2.81 (2001). The final regulations "apply to all prisoners and parolees . . . who are serving sentences under the District of Columbia Code for felony crimes committed prior to August 5, 2000." Final Parole Regulations, 65 Fed.Reg. at 45,887.

In 2001, the Commission undertook a final round of rulemaking in relation to its reparole provision for D.C. Code offenders. The new amendment clarified the Commission's authority in subsequent review

hearings to make findings of fact regarding issues not resolved by the D.C. Board of Parole at an initial revocation hearing. <u>See</u> <u>Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code</u> ("<u>Reparole Amendment</u>"), 66 Fed.Reg. 37,136 (proposed July 17, 2001) (codified at 28 C.F.R. § 2.81 (2005)). This, in the Commission's view, enhanced its ability to properly determine suitability for reparole under the federal regulations and addressed situations where the Board had revoked parole based on administrative charges sufficient to warrant revocation and return to prison, but without reaching more serious criminal charges. <u>Id.</u> The amended reparole provisions were made "fully retroactive to all reparole decisions of the Commission from August 5, 1998, forward, and shall apply to all reparole decisions made by the Commission in the future with respect to offenders whose paroles were revoked by the D.C. Board of Parole." <u>Id.</u> at 37, 137.

<u>Fletcher</u>, 433 F.3d at 871-72; <u>see also</u>, Doc. 13-2 at 24-42; Doc. 13-3, at 1-63.)

In the matter *sub judice*, after determining that McGill's salient factor score was six and the severity of his offense fell into Category Two, the USPC revoked his parole, credited none of the time he spent on parole, and continued his incarceration until the expiration of his original sentence. The same result was reached at the statutory interim hearing. Respondent takes the position that in arriving at this decision, despite McGill's contention to the contrary, the USPC reviewed and considered his post-incarceration behavior at the time of his interim hearing "noting that he had performed well in his prison job and that he had not participated in any significant programming." (Doc. 13, at 12, citing Doc. 13-2, at 20.) In support of this argument, respondent relies on the case of <u>Robinson v. Reilly</u>, 340 Fed. App'x 772 (3d Cir. 2009), in which it was found that no ex post facto violation was established. The <u>Robinson</u> court relied heavily on the fact that his post-incarceration behavior was considered in the course of Robinson's initial

parole determination. However, reliance on this case is misplaced as it is a case involving application of parole guidelines, not reparole guidelines. "The new federal regulations governing parole suitability for D.C. Code offenders take into account post-incarceration behavior; however, the federal regulations do not take into account post-incarceration behavior when the Commission determines suitability for reparole for offenders. . . ." Fletcher, 433 F.3d at 878. Although the USPC referenced McGill's prison job and lack of participation in any significant programming, because neither the salient factor score nor the offense severity score takes into account post-incarceration behavior when considering reparole, his post-incarceration behavior could not have factored into the USPC's assessment of his reparole eligibility or suitability. See 28 C.F.R. §§ 2.81, 2.21, 2.20; see also Fletcher, 433 F.3d at 873. "Absent evidence to the contrary, the Court presume[s] the Board follows its statutory commands and internal policies in fulfilling its obligations." Garner, 529 U.S. at 256.

McGill's pertinent post-incarceration behavior includes being employed in the Maintenance Department at the Federal Correctional Institution at Schuylkill for more than two years with good to outstanding work progress reports. (Doc. 13-2, at 19.) He has also participated in GED courses. (Id.) And, significantly, he has maintained a clear conduct record since his return to custody on the violator warrant. (Id. at 20.) McGill has sufficiently demonstrated that retroactive application of the federal guidelines, which fail to consider these post-incarceration factors, has resulted in a significant risk of increased punishment. Consequently,

the USPC will be directed to conduct a new hearing utilizing the D.C. Regulations governing reparole which take into account post-incarceration behavior and rehabilitative accomplishments.

**III.**    **<u>Conclusion</u>**

The petition will be granted to the extent that the USPC will be directed to hold a new statutory interim hearing utilizing the D.C. Regulations applicable to reparole.  An appropriate order follows.




<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:      August 25, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


**KEVIN L. MCGILL,**                      :     **CIVIL ACTION NO. 1:09-CV-1404**
                                          :
                   **Petitioner**         :     **(Judge Conner)**
                                          :
          **v.**                          :
                                          :
**T.R. SNIEZEK,**                         :
                                          :
                   **Respondent**         :

## <u>ORDER</u>

AND NOW, this 25th day of August, 2010, upon consideration of the petition

for writ of habeas corpus, and in accordance with the foregoing memorandum, it is

hereby ORDERED that:

1.   The petition for writ of habeas corpus is GRANTED to the extent that the United States Parole Commission shall hold a new statutory interim hearing utilizing the 1987 District of Columbia Municipal Regulations applicable to reparole within thirty days of the date of this order.

2.   There is no basis for the issuance of a certificate of appealability.  28 U.S.C. § 2253(c).

3.   The Clerk of Court is directed to CLOSE this case.



        S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge